FILED 10 OCT 01 15:20 USDC-ORE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

DAVID SNAUER,  					09-CV-6277-TC

                Plaintiff,

    v.  					FINDINGS AND RECOMMENDATION

CITY OF SPRINGFIELD, a municipality; and
OFFICER E. SETHER (No. 337), in his
individual capacity, and as a police official for
the City of Springfield,
                Defendants.

COFFIN, Magistrate Judge:

    This is an action under 42 U.S.C. section 1983. Plaintiff alleges that defendant Evan Sether (Sether), who was a police officer for defendant City of Springfield (Springfield), violated his right against unreasonable seizures under the Fourth Amendment to the United States Constitution by using excessive force in arresting him. Plaintiff alleges that Springfield is liable for Sether's alleged use of excessive force because Springfield has a custom or policy of allowing its police officers to use excessive force, and a custom or policy of inadequate supervision, training and discipline of its officers. Plaintiff seeks compensatory damages against both

Page 1 - FINDINGS AND RECOMMENDATION

defendants, and punitive damages against Sether. Both defendants move for summary judgment–Sether on the basis of qualified immunity and Springfield on the basis that the evidence is insufficient to prove that a municipal custom or policy caused the alleged violation of plaintiff's Fourth Amendment rights.

## Legal Standard

Federal Rule of Civil Procedure 56 allows the granting of summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). There must be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is missing. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the movant has met its burden, the burden shifts to the nonmovant to produce specific evidence to establish a genuine issue of material fact or to establish the existence of all facts material to the claim. Id.; see also, Bhan v. NME Hosp., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1105 (9th Cir. 2000). In order to meet this burden, the nonmovant "may not rely merely on allegations or denials in its own pleading," but must instead "set out specific facts showing a genuine issue of fact for trial." Fed. R. Civ. P. 56(e).

Material facts which preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because

Page 2 - FINDINGS AND RECOMMENDATION

they may reasonably be resolved in favor of either party." Id. On the other hand, if, after the court has drawn all reasonable inferences in favor of the nonmovant, "the evidence is merely colorable, or is not significantly probative," summary judgment may be granted. Id.

## Factual Background

At approximately 1 AM on October 24, 2007, Springfield police officer Evan Sether was on patrol, alone, in a marked patrol car westbound on Main Street at the intersection of 42nd Street in Springfield when he observed a Honda Civic being driven southbound on 42nd Street without its rear license plate light on. Sether turned left, followed the Honda and activated his overhead lights to stop the driver for the traffic violation of operating a vehicle without an illuminated registration plate.

David Snauer, the driver of the Honda and the plaintiff in this action, did not pull over when Sether activated his lights, but instead turned abruptly into the parking lot of an apartment building and drove quickly to a corner of the lot, where he slowed, jumped out of the vehicle, and began running between two apartment buildings, leaving the driverless Honda to roll into an apartment building.

Sether emerged from his patrol car and gave chase on foot, identifying himself as a police officer and ordering the driver to stop. Snauer refused and kept running. Sether then drew his taser, again yelling for the driver to stop. Snauer continued fleeing, and began climbing over a six or seven foot high wooden fence. When Snauer had reached the top of the fence, Sether fired his taser. When Snauer was hit by the probes, he became temporarily paralyzed, and plunged head-first to the other side unable to break his fall. As a result, Snauer sustained serious bodily injury, i.e. multiple spinal fractures.

Page 3 - FINDINGS AND RECOMMENDATION

## Discussion

### Defendant Sether's Motion for Summary Judgment

Sether contends he is entitled to qualified immunity on Snauer's excessive force claim. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In deciding whether a government official is entitled to qualified immunity against a section 1983 claim, a court considers two issues. First, a court must decide whether the facts that a plaintiff has alleged or has proven make out a violation of a constitutional right. If they do not, then the defendant is entitled to qualified immunity. second, the court must decide whether the right at issue was clearly established at the time of the government official's alleged misconduct. If it was not, then the defendant is entitled to qualified immunity. Pearson v. Callahan, __U.S.__,129 S.Ct. 808 (2009); Saucier v. Katz, 533 U.S. 194 (2001).

The key inquiry is whether it would be clear to a reasonable government official that the official's conduct would was unlawful in the situation the official confronted. Prior case law must give the government official clear warning that the official's conduct is unlawful. Hope v. Pelzer, 536 U.S. 730 (2002); see also Brosseau v. Haugen, 543 U.S. 194 (2004)(where prior case law suggested that the defendant's conduct fell in the "hazy border between excessive and acceptable force," the cases did not clearly establish that the defendant's conduct violated the Fourth Amendment).

Sether in essence relies on a series of Ninth Circuit cases involving taser incidents in advocating his qualified immunity arguments. In Bryan v. McPherson(sic), 590 F.3d 767 (9th

Page 4 - FINDINGS AND RECOMMENDATION

Cir. 2009) an officer tasered a man after a traffic stop who then fell face first on the ground, fracturing four of his teeth. The court described the level of force for the taser as an intermediate, significant level of force that must be justified by a strong governmental interest. After deciding the circumstances did not justify the use of such force, the court found that the officer was not entitled to qualified immunity. Next, the Ninth Circuit decided <u>Mattos v. Agarano</u>, 590 F.3d 1082 (9th Cir. 2010), in January 2010. The Ninth Circuit ruled that the four defendant police officers were entitled to summary judgment on the basis of qualified immunity against the section 1983 claim of plaintiff Jayzel Mattos that they had used excessive force against her when one of them tasered her after they responded to a 911 call of domestic violence.

Viewed in the light most favorable to the plaintiffs, the facts were that Mattos's daughter called 911 to report that her parents, plaintiffs Troy and Jayzel Mattos, were engaged in a physical fight. When the four officers arrived, they found Troy sitting outside with a couple of beer bottles near him. He smelled of alcohol. He admitted that he had argued with Jayzel, but denied that the argument had become physical. The officers asked him to go into the house and bring Jayzel out so they could make sure she was fine. When he brought her back to the door, the officers had already stepped into the house. Troy got angry and told the officers to get out of the house, yelling profanities at them. Jayzel urged everyone to calm down, and she agreed to exit the house with officers. One of the officers moved towards Troy to arrest him, but Jayzel stood in the way. The officer then tasered Jayzel. She fell to the floor. She was able to remove the taser probes herself and she refused medical assistance. There was no evidence of how badly she was injured, if at all. 590 F.3d at 1084-85. The Ninth Circuit held that the officers were entitled to qualified immunity under both prongs of the qualified immunity analysis.

Page 5 - FINDINGS AND RECOMMENDATION

The court ruled that the use of a taser is a "serious intrusion" in the Fourth Amendment right to be free from unreasonable searches and seizures. However, the court ruled that this serious intrusion into Jayzel's rights was warranted because (1) her action, although not constituting a serious crime, did obstruct officers' efforts to apprehend Troy; (2) she and Troy together presented a threat to safety to the safety of the officers through their noncompliance; and (3) she and Troy were resisting the officers' attempt to apprehend Troy. The court ruled that the use of the taser did not constitute the use of excessive force, even when viewing the evidence in the light most favorable to the plaintiffs. 590 F.3d at 1086-89. In addition, the court ruled that case law would not have put officers on notice that the use of their taser was a use of excessive force under the circumstances. Id. at 1089-90.

In March 2010, the Ninth Circuit decided Brooks v. City of Seattle, 599 F.3d 1018 (9th Cir. 2010). The court ruled that three police officers were entitled to qualified immunity against the plaintiff's claim that they used excessive force against her by tasing her three times during a traffic stop. In Brooks, the officers used the taser in "touch" or "drive-stun" mode as opposed to "dart mode." The use of a taser in "touch" or "drive-stun" mode involves touching the taser to the body, causing only temporary, localized pain, like a pain compliance hold. In contrast, applying the taser in "dart mode" (wherein darts are shot at the suspect from some distance) causes nueromuscular incapacitation. 599 F.3d at 1026. However, after the briefing was filed in the instant case, the Ninth Circuit entered an order granting en banc review of the Brooks panel decision and directing that it not be cited as precedent. See Order of September 30, 2010 in No. 08-35526, D.C. No. 2: 06-cv-01681-RAJ.

Page 6 - FINDINGS AND RECOMMENDATION

The latest decision from the Ninth Circuit on the subject was decided June 18, 2010. The court issued a new opinion in <u>Bryan v. Macpherson</u>. The court withdrew that part of its December 2009 opinion, which was found at 590 F.2d at 781-82, in which the court had ruled that, based on the state of law at the time of the incident, a reasonable officer in Officer MacPherson's circumstances would have known that his use of the taser violated Bryan's clearly established rights, and that he was therefore not entitled to qualified immunity.

The court reversed itself and ruled that MacPherson was entitled to qualified immunity, even though, viewing the evidence in the light most favorable to Bryan, Officer MacPherson had used unconstitutionally excessive force:

> We do not need to find closely analogous case law to show that a right is clearly established.... However, as of July 24, 2005, there was no Supreme Court decision or decision of our court addressing whether use of a taser, such as the Taser X26, in dart mode constituted an intermediate level of force. Indeed, before that date, the only statement we had made regarding tasers in a published opinion was that they were among the "variety of non-lethal 'pain compliance' weapons used by police forces." .... And, as the Eighth Circuit has noted, "[t]he Taser is a relatively new implement of force, and case law related to the Taser is developing." .... Two other panels have recently, in cases involving different circumstances, concluded that the law regarding tasers is not sufficiently clearly established to warrant denying officers qualified immunity. [citing <u>Mattos v. Agarano</u> and <u>Brooks v. City of Seattle</u>.]
> Based on these statements regarding the use of tasers, and the dearth of prior authority, we must conclude that a reasonable officer in Officer MacPhearson's position could have made a reasonable mistake of law regarding the constitutionality of taser use in the circumstances Officer MacPherson confronted in July 2005. Accordingly, Officer MacPherson is entitled to qualified immunity.

608 F.3d 614, 629 (9th Cir. 2010)(citations omitted).

Page 7 - FINDINGS AND RECOMMENDATION

Citing this line of cases, Sether contends he is entitled to qualified immunity. The fundamental flaw, however, in Sether's reasoning is his contention that his use of the taser under the specific factual circumstances of this case constituted no more than an "intermediate level of force" and thus was constitutionally permissible. The level of force used cannot be analyzed in a vacuum. See Chew v. Gates, 27 F.3d 1432, 1441 (9th Cir. 1994) ("factors bearing on the reasonableness of a particular application of force are not to be considered in a vacuum"). For example, an officer's shove of a suspect to get him in a prone position is normally an insignificant level of force. If, however, the suspect is perched on the third story ledge of a building, the shove can be deadly force under those circumstances. The question whether force is excessive turns on the objective reasonableness of the officer's conduct under the circumstances. See Graham v. Connor, 490 U.S. 386, 397 (1989).

The definition of "deadly force" has been well established in this circuit since the en banc holding of Smith v. City of Hemet, 394 F.3d 689 (9th Cir. 2005) in which the court joined sister circuits in fashioning a deadly force test that looked to whether the force employed "creates a substantial risk of causing death or serious bodily injury. Id. at 706. (emphasis supplied). Here, Sether was trained in the use of a taser and knew well that a tasered suspect becomes temporarily paralyzed. The type of taser used by Sether deploys dart probes which cause neuromuscular incapacitation, which is different from a stun gun mode which is designed to effect pain compliance.[1] (Taser Operating Manual, p. 24 of Defendant's Ex. 6 to doc #16). The police are expressly warned by the manufacturer that: "Taser-induced strong muscle contractions usually

---

[1] Thus Brooks, supra, was not particularly instructive as the taser deployed there was in stun gun mode. Moreover, the court has granted en banc review of Brooks and thus it has no precedential value at this point.

Page 8 - FINDINGS AND RECOMMENDATION

render a suspect temporarily unable to control his or her psychomotor movements. This may result in secondary injuries such as those due to falls. This loss of control, or inability to catch oneself, can in some circumstances increase the risk(s) of serious injury or death ... [P]ersons at higher risk include: those located at elevated or unstable platforms (e.g., trees, roofs, ladders, ledges, cranes, loading docks)." Id. at 4.

It is undisputed that Sether was trained not to Taser a suspect where the suspect may fall from a significant height. Although the parties quibble over what is meant by "significant," it is obvious that the greater the height, the greater the danger. I note that the height of a loading dock, used as an example by Taser in its manual as a height creating a higher risk of serious injury or death, is approximately four feet.

It does not take a panel of judges to alert a reasonable police officer that causing a paralyzed man to tumble head first onto the ground from a platform six to seven feet above the ground "creates a substantial risk of causing death or serious bodily injury." Smith, 394 F.3d at 706. I find it illuminating that in the Springfield training material, the instructions specify that volunteers who subject themselves to tasering are to be placed on mats and assisted by two spotters who are instructed to grab hold to support the volunteer both before and during exposure. (P. 48 of Defendant's Ex. 6 to doc #16). One cannot imagine a training exercise in which a volunteer stands atop a six foot high platform and is tasered without the help of spotters. A law enforcement agency would never subject an officer or other volunteer to such a training exercise–notwithstanding the lack of any case law on the subject–because they already know such would inevitably result in serious bodily injury and even death. In short, the police do not need judges to explain the obvious to them before they can be held accountable for an

Page 9 - FINDINGS AND RECOMMENDATION

unreasonable or excessive use of force. As explained by plaintiff's expert, Josh Foster, a former Texas police officer and trainer on the use of Tasers:

> Anyone trained to operate and carry a TASER in the field should, by TASER International standards, clearly understand that the application of the TASER to a suspect who is high off the ground would be considered a deadly force application in that the potential result of the particular use of force could cause serious bodily injury or even death.

(Ex. 1 to Declaration of Foster doc #23).

The defendant does not dispute that the circumstances presented here did not justify the use of deadly force. Thus, even accepting at face value that Sether had probable cause to arrest Snauer for multiple misdemeanors, such does not justify the use of force creating a substantial risk of death or serious bodily injury, and no reasonable officer would have failed to understand that deadly force was unlawful under these circumstances. Graham, 490 U.S. at 397. Accordingly, defendant Sether's motion for summary judgment on the basis of qualified immunity should be denied.

**Springfield's Motion for Summary Judgment**

In Count Two of his claim, plaintiff alleges that Springfield is liable for the alleged violation of his Fourth Amendment right against the use of excessive force because Springfield "has made or allowed numerous other similar incidents of excessive force, and ... [has] expressly encouraged or acquiesced in this unlawful behavior, and/or tacitly encouraged or acquiesced in it by failing to train, supervise or discipline its officers, thus evincing deliberate indifference to plaintiff's constitutional rights, sufficient to support a verdict that [its] policies, customs, or practices caused the use of excessive force against plaintiff." Plaintiff's Complaint, Paragraph

19.

In Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978), the Supreme Court held that a municipality can be held liable under 42 U.S.C. section 1983 only for injuries which are inflicted pursuant to a municipal custom or policy. The municipality cannot be held liable solely because it employed the alleged tortfeasor. In other words, the municipality cannot be held liable under a theory of respondeat superior. Monell, 436 U.S. at 691. The Supreme Court ruled that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under section 1983." Id. at 694. A municipality is not liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort." Id. at 691.

Like Count Two, Count Three of plaintiff's claim alleges that Springfield is liable for the violation of his constitutional rights because Sether's use of force was caused by a municipal custom or policy. He alleges in part that Springfield is liable because it had a custom or policy of inadequate training of its police officers in the use of tasers. (Plf.'s Compl. ¶¶ 23-27 doc #1).

Plaintiff's claims against Springfield appear to be primarily, if not exclusively, based on his contention that the City failed to adequately train its officers on the use of the taser by failing to sufficiently explain the dangers of tasing someone at a height, failing to use the examples in the Taser manual of dangerous heights (e.g., a loading dock), and failing to define "significant" height.

A plaintiff who alleges a claim under 42 U.S.C. section 1983 against a city under a "failure to train" theory faces a difficult burden of proof. "[T]he inadequacy of police training

Page 11 - FINDINGS AND RECOMMENDATION

may serve as a basis for section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under section 1983." Id. at 389. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality–a 'policy' as defined by [the Supreme Court's] prior cases –can a city be liable for such a failure under section 1983." Id. The plaintiff has the burden of proving that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can be reasonably said to have been deliberately indifferent to the need." Id. at 390.

Plaintiff has failed to meet this burden. The evidence shows that Sether was trained that tasers cause neuromuscular disruption, temporarily causing the subject to lose the ability to control his or her movements. Sether was voluntarily tased during training, and had himself experienced neuromuscular disruption. He was trained that use of the taser created the risk of secondary injuries to the subject caused by the subject's inability to catch himself or herself during falling. He was trained that this risk increased when the subject was in an elevated position off the ground. He was trained that the Springfield Police Department's policy on tasers stated that they "shall not be used in situations where the suspect may fall from a significant height." As noted above, plaintiff's quibble over the adjective "significant" is overstated. Any reasonable police officer would know from the training received in this case that tasing a suspect who is cresting a six to seven foot high fence would likely result in serious injury. Thus,

Springfield's motion for summary judgment should be granted.

### Sether's Motion to Dismiss Punitive Damages Claim

Although Sether moves for summary judgment on Count Four of plaintiff's complaint which seeks punitive damages, this is not a separate claim of liability but rather a prayer for punitives on the excessive force claim (Count One). I thus construe it as a motion to dismiss punitives from the case and deny it without prejudice to renew at the close of evidence at trial. The trial judge is in the best position to determine whether the evidence warrants submission of punitive damages to the jury.

### Conclusion

For the reasons set forth above, defendants' motion for summary judgment (doc #11) should be granted in part and denied in part. Defendant City of Springfield's motion for summary judgment on Counts Two and Three of plaintiff's complaint–the municipal liability claims, should be granted. Defendant Sether's motion for summary judgment on Counts One and Four of plaintiff's complaint–the excessive force and prayer for punitive damages, should be denied.

DATED this 1st day of October, 2010.

_____
THOMAS M. COFFIN
United States Magistrate Judge